E. L. CONNELLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102592.   Promulgated January 27, 1942.

*Hilary D. Mahin, Esq.*, and *L. Karlton Mosteller, Esq.*, for the petitioner.

*W. H. Payne, Esq.*, for the respondent.

OPINION.

MELLOTT: This proceeding is a companion case to *J. J. Larkin*, Docket No. 102593, decided this date. (*J. J. Larkin*, 46 B. T. A. 213.) It involves a deficiency in income tax in the amount of $1,630.89 for the calendar year 1936, the major portion of which is in controversy. It was submitted upon a separate stipulation of facts and we find the facts to be as stipulated. They are all contained in the stipulation set out at length in the *Larkin* case and need not be repeated here.

The question is: Did petitioner sustain a deductible loss in the

amount of $5,499.17 in 1936 when this amount was paid by him to Larkin, or did he, as a joint adventurer with Larkin, sustain a capital loss in an earlier year? The deduction of this amount was claimed by him in his amended return as a "bad debt" under section 23 (k) of the Revenue Act of 1936; but it is obvious that the "debt" was one owed by, rather than to petitioner, so the deduction could not be allowed under that section. Both parties, however, discuss upon brief the question as stated by us, so we will do likewise.

Briefly summarizing the facts, Larkin and some associates—not including petitioner—in 1930, executed a joint note to a bank for the purpose of acquiring certain stock from the owners of it. The stock was then pledged with the same bank as security for the indebtedness of the owners. "Thereupon the amount of the loan * * * was applied by the * * * Bank in reduction of the indebtedness due it [by one group of owners] and in cancellation and in satisfaction of the" note of the other owners, the stock being retained as collateral to the note of Larkin and his associates. Subsequently the original note of Larkin and his co-signers was canceled and separate notes were executed by each, secured by an aliquot part of the stock then held by the bank, each of the parties also severally guaranteeing the notes of the others, and, in Larkin's case, he also putting up additional collateral.

In 1934 the collateral to Larkin's note was sold for a nominal amount and it had become worthless prior to 1935. In 1936 Larkin paid upon his obligation the sum of $10,998.33 and petitioner paid Larkin one-half of this amount, or $5,499.17, the amount presently in issue.

Petitioner's payment to Larkin was made pursuant to an agreement which he made with Larkin after the original note was signed by him and the other co-signers. Petitioner never signed any of the notes. After the original note was signed and on the same date Larkin "informed petitioner, his business associate, of the general nature of the transaction and offered petitioner one-half of the interest he had therein and to share equally with petitioner the profits and losses resulting therefrom. This offer of J. J. Larkin was accepted by petitioner." Subsequently Larkin advised petitioner of all the details of the entire transaction and:

All of the acts performed and agreements made by J. J. Larkin after the end of 1930, in connection with the transaction entered into for the acquisition of the shares of stock of the Exchange National Bank, were with the knowledge of Petitioner and with the understanding between them that J. J. Larkin was acting for both, pursuant to their oral agreement to share equally in the transaction and in the profits and losses resulting therefrom, and also in conformity with their understanding that Petitioner would reimburse J. J. Larkin for one-half of any loss or losses which J. J. Larkin might incur with respect thereto.

Respondent insists that the arrangement between petitioner and Larkin constituted a joint venture; that the borrowing of the money and the investment in the stock were equally for the benefit of both; that if Larkin and petitioner were not joint adventurers, Larkin was petitioner's agent; that the acts performed and the agreements made by Larkin were with the knowledge of petitioner and with the understanding between them that Larkin was acting for both, pursuant to their oral agreement to share equally in the profits and losses; and that the loss, which petitioner and Larkin sustained, occurred in 1934 when the stock was sold by the bank or at least in some year prior to 1936.

Petitioner contends that he entered into a contract with Larkin to acquire, upon credit, an interest in the stock; that he was not a joint adventurer with Larkin in the purchase of the stock because his agreement was made after Larkin and his associates had obligated themselves to acquire the stock and after they had borrowed the money to do so; that respondent has drawn erroneous and unjustified inferences from the stipulated facts, particularly in assuming that the agreement between Larkin and petitioner was made at or before the time the money was borrowed from the bank to acquire the stocks; and that the facts are analogous to those before the Board in *Max Gross*, 36 B. T. A. 759.

We agree with petitioner. The stipulated facts are quite similar to those of the *Gross* case and the same conclusion should be reached here. Petitioner and Larkin were not joint adventurers. They did not invest their funds or contribute their money or property in carrying out a single venture for their common benefit. Cf. *Chase S. Osborn*, 22 B. T. A. 935, 945; *Motter* v. *Smyth*, 77 Fed. (2d) 77. Larkin invested his funds, albeit they had been borrowed, acquired the stock, and thereafter offered petitioner one-half of the interest he had therein and to share equally with petitioner the profits and losses resulting therefrom. This offer was accepted by petitioner. Nor does the fact that the "acts performed and the agreements made" by Larkin subsequently "were with the knowledge of petitioner and with the understanding" that he "was acting for both" have the effect of making them joint adventurers. Inferentially respondent admits that this is true; for he asks us to conclude from the stipulated facts, that the money was obtained by Larkin and applied in the purchase of the stock *after* the agreement to share the profits and losses was made. He relies upon the fact that the agreement between petitioner and Larkin was made on the very day that the note for the purchase money was executed. We can not spell out of the stipulated facts an acquisition of the stock by Larkin and petitioner after the money was obtained nor can we conclude that the stock

was acquired with funds belonging to or furnished by Larkin and petitioner as joint adventurers. The stock was acquired by Larkin and thereafter petitioner agreed to reimburse him "for one-half of any loss or losses which [he, Larkin] might incur with respect thereof."

Respondent's argument to the effect that petitioner "is in the same situation as Larkin" has been considered but is believed to be untenable. Larkin, as is being held in the opinion contemporaneously promulgated, borrowed money, purchased stock, and sustained a loss either when the stock became worthless or when it was sold by the lender under the note. Petitioner, however, had no investment in the stock, but was merely under an obligation to reimburse Larkin for one-half of the loss which he should sustain. Under the rule of *Eckert* v. *Burnet*, 283 U. S. 140; *Jenkins* v. *Bitgood*, 101 Fed. (2d) 17; *Helvering* v. *Price*, 309 U. S. 409, *Quinn* v. *Commissioner*, 111 Fed. (2d) 372; and *Max Gross*, *supra*, his loss, he being on the cash basis, occurred when he performed his obligation and made payment.

The Commissioner erred in disallowing the claimed deduction. Other adjustments made by him are not contested.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL dissents.