Irving B. Hexter v. Commissioner.
Hexter v. Commissioner
Docket No. 23012.
United States Tax Court
1950 Tax Ct. Memo LEXIS 188; 9 T.C.M. (CCH) 439; T.C.M. (RIA) 50136; June 2, 1950
Elmer J. Babin, Esq., 1018 Guardian Bldg., Cleveland 14, O., for the petitioner. Clarence E. Price, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies as follows: 1943
Income tax and victory tax
$2,255.88
1944
Income tax
2,079.04
1945
Income tax
2,383.68 The year 1942 is involved, but solely because of the application of the Current Tax Payment Act of 1943. The petitioner concedes that some of the determinations of the respondent for each of the years involved are correct, and that there are deficiencies for 1943, 1944, and 1945, but in lesser amounts than has been determined. *189 The general question to be decided is whether the petitioner is entitled to a loss deduction under section 23(e) of the Internal Revenue Code in each of the years 1943, 1944, and 1945. The amount of the deduction in each year, which the petitioner now claims, is less than he deducted in his income tax return for each year. The amount which is claimed as a loss deduction in each year is part of payments made by the petitioner in each year on a note which he executed in 1940, which renewed a note which he gave to the same creditor in 1936 and covered accrued interest on the carlier note. The 1936 note was given in evidence and recognition of indebtedness of petitioner for his share of obligations which were incurred during the period 1928 through 1935. Petitioner filed his returns for the taxable years with the collector for the eighteenth district of Ohio, in Cleveland. The record consists of testimony and exhibits from which we make the following findings of fact. Findings of Fact Petitioner is a resident of Shaker Heights, Ohio. He keeps his books of account and makes his income tax returns on the calendar year and cash basis. He has done so at all *190 times during years preceding the taxable years. Under circumstances which are set forth hereinafter, the petitioner gave a note to Robert Hays Gries on November 1, 1940, in the amount of $72,403.91 which was the total of the face amount of an earlier note dated April 1, 1936, in the amount of $60,758.58, made payable on demand to Gries, and bearing 5 per cent interest, and the interest which had accrued on the note in the amount of $11,645.33. The details of the indebtedness of $60,758.58, which was incurred between 1928 and 1935 are set forth hereinafter. Petitioner was obligated to make installment payments annually on the 1940 note beginning July 1, 1941. The 1940 note did not bear interest. Petitioner made the following payments on the 1940 note during the years involved in this proceeding, as follows: $1,250 in 1942; $3,500 in 1943; $2,750 in 1944; and $2,500 in 1945. In his income tax returns [1] for the above years, the petitioner deducted, on account of his payments on his note, the following: $3,750 for 1943; $2,500 for 1944; and $2,500 for 1945. Petitioner erred in the amount which he deducted in the returns for 1943 and 1944 by overstating the amounts of the deduction *191 for 1943 by the amount of $250, and by understating the amount of the deduction for 1944 by $250. The respondent has disallowed the entire amount of the deduction which was taken in each return for 1943, 1944, and 1945. [2]
In this proceeding, in his petition, the petitioner has waived his claim for deduction of part of the amounts which he paid in the years in question on the 1940 note. He now claims deductions as follows: $567.50 for 1942; $1,589.00 for 1943; $1,248.50 for 1944; and $1,135.00 for 1945. *192 The results of the reduced claims in amounts of the deductions in issue for the years involved with respect to the amounts actually paid on the note, and the amounts deducted in the income tax returns, respectively, are set forth in the margin. [3]
The amount of the deduction which the petitioner now claims for each of the taxable years is 45.4 per cent of the amount of the payment which he made on his note in each year; and the amount of each payment which petitioner no longer seeks to deduct from income is 54.6 per cent thereof. The above percentages will be explained hereinafter. The facts relating to the indebtedness of the petitioner to Robert Hays Gries are as follows: Petitioner and Gries have known each other for about 35 years, and they were intimate *193 friends during the period from about 1925 to 1936. During the latter period the financial position of Gries was good and was better than that of petitioner. Petitioner's financial position was fair in 1925, but it became bad during the years of the general "depression" in 1929 and the following years. In the latter part of 1927, Gries, who had capital which he wanted to invest, discussed a plan with petitioner, who did not have any capital to invest. Gries agreed to provide the capital for purchases of shares of stock of corporations and real estate, and to let petitioner have one-half of the profits, if petitioner would bear one-half of the losses and one-half of the expenses which might be involved in holding property. Petitioner agreed to share one-half of the losses and expenses. Upon this understanding, Gries made several purchases with his own funds or with money which he borrowed. At no time did petitioner invest his own capital. Gries made purchases of stock of four corporations. Stocks of three corporations were sold at a loss, and the other stock became worthless. In each instance, when the loss was sustained, one-half of the loss was charged to petitioner, but petitioner *194 was unable to pay Gries his share of the losses and gave his notes to Gries. Also, there were two transactions in real estate, one of which was financed by a loan which Gries obtained on his own note. Petitioner did not give his note or endorse the note of Gries. Both real estate transactions resulted in losses. Various expenditures were incurred before the real estate transactions ended in losses, but Gries advanced the cash and petitioner contributed none. Petitioner was charged with one-half of the expenses and losses. Beginning in January, 1928, Gries set up on his books a journal account in petitioner's name in which entries were made charging petitioner for one-half of losses and expenses. This account was kept in Gries' office during the years 1928 through 1936. The various ventures ended at different times during that period, and the whole arrangement finally came to an end in 1935. Petitioner was unable to pay Gries his one-half share of expenses and losses, excepting $1,189.84. From time to time, instead, he gave Gries notes for the amounts owing to Gries under the running account, and Gries charged to petitioner's account, interest on the notes as the interest accrued *195 but remained unpaid. Gries did not loan petitioner any money in connection with the various transactions in stock and real estate, or for the payment of expenses, which petitioner could, if a loan had been made to him, have applied to the purchase of stocks and real estate, and to the payment of expenses which were involved. Rather, Gries used his own funds to make purchases and pay expenses, and then charged to petitioner in his running account with petitioner, one-half of expenses paid by Gries, and one-half of losses when they were ascertained and sustained. The indebtedness to Gries which was incurred by petitioner under the agreement made in 1927 or 1928, as above described, up to April 1, 1936, was as follows: Petitioner's one-half share of stock transaction losses amounted to $6,189.19; and his share of losses and expenses of real estate transactions amounted to $14,524.46; total $20,713.65, exclusive of any interest charges. There were other entries made in the renning account of petitioner with Gries for loans of money to petitioner during the period the account was in operation. Petitioner's financial condition became bad and Gries loaned him sums of cash from time *196 to time, which were small, on the whole, in amounts ranging from $26 to about $600. In three or four instances Gries advanced one or two thousand dollars to petitioner, and at one time, a larger sum. These items totalled $24,809.84, exclusive of any interest charges. Petitioner does not claim a deduction with respect to any repayment of any part of these personal loans. Prior to April 1, 1936, petitioner gave Gries four notes, $10,000 in 1928, $29,000 in 1930, $6,591.69 in 1931, and $6,251.87 in 1933. The notes bore interest, and as of April 1, 1936, the interest charges in the account totalled $15,235.09. On April 1, 1936, petitioner gave Gries a demand, 5 per cent note for $60,758.58, in exchange for the earlier notes, which was the total of the above described classes of charges against petitioner, namely, petitioner's share of losses and expenses from various transactions, $20,713.65; personal loans to petitioner, $24,809.84; and interest on prior notes given on account, $15,235.09. From April 1, 1936 to November 1, 1940, petitioner did not make any payments on the note of April 1, 1936, and he did not make any payments on interest. Interest accrued on the note in the amount *197 of $11,645.33, bringing the total indebtedness up to $72,403.91. On November 1, 1940, petitioner gave Gries a now non-interest-bearing note, for $72,403.91, [4] in exchange for the note of April 1, 1936. Thereafter he made the payments which have been set forth above. None of the payments made by petitioner on the 1940 note from 1941 through 1945 were payments of interest which had accrued before November 1, 1940, in the amount of $26,880.42. The payments were on and were applied to the principal amount of the indebtedness of petitioner in the amount (according to the note as it was made at the time) of $45,523.49. The indebtedness of petitioner on account of losses from and expenses of the ventures in the amount of $20,713.65 was 45.4 per cent of the principal amount of petitioner's indebtedness - $45,523.49; and the personal loans in the amount of $24,809.84, *198 were 54.6 per cent of the principal amount. [5]
After 1945, petitioner made further payments on the 1940 note. All payments from 1941 to 1948, aggregated $23,000 and were applied to the principal of the debt. On October 19, 1948, a settlement agreement was made with Gries under which Gries waived payment of all of the interest which had accrued prior to November 1, 1940, excepting $7,189.84, and petitioner agreed to make prompt payment in 1948 and before January 4, 1949, of the balance of the principal amount of the debt. Petitioner made the payments and was released from all further liability. Opinion The question in this proceeding is under section 23(e)(2) of the Internal Revenue Code. Respondent, on brief, regards the issue as one which is confined to the question of whether the petitioner *199 has proved that he sustained a loss or losses in transactions entered into for profit, and contends that the deductions should be denied for failure of proof. We are unable to agree with this posture of the question. The respondent misconstrues the issue and, also, adopts an incorrect premise in his argument. The error of the respondent is not readily understood because the petitioner, in his brief, correctly states the question of law, and the respondent could have availed himself of the opportunity to take issue squarely with the petitioner by filing a reply brief, which he failed to do. The question of fact is whether the petitioner has sustained loss under the arrangements to which he agreed, which have been described in the findings of fact. The question of law is whether deduction is permissible in the years in which petitioner made payments on his note. The petitioner introduced evidence which stands uncontradicted and unimpeached. Both petitioner and Gries testified in this proceeding, and their testimony is supplemented and supported by the accounting record which was kept and notes and agreements which were executed. We are unable to find any reason for not believing *200 the testimony. The conduct of the parties in working out liquidation of the indebtedness of petitioner over a period of nearly ten years confirms their testimony about their arrangements. The petitioner has met his burden of proof by introducing clear and substantial evidence. The question relates only to petitioner's payments toward liquidating his indebtedness to Gries which arose out of petitioner's agreement to bear one-half of losses and expenses of several transactions in which the capital of Gries, only, was employed. Petitioner admits that part of his indebtedness to Gries was for personal loans, and petitioner, in his petition, has made an allocation of his installment payments on his note between the indebtedness for losses and expense and the indebtedness for personal loans. The allocation is proper, subject only to a possible slight revision of the percentages. Therefore, the following considerations relate only to the part of petitioner's indebtedness for losses and expenses. The respondent has adopted a false premise, namely, that Gries loaned money to petitioner to invest, in turn, with Gries in securities and real estate, and to pay expenses. The evidence does not *201 support such conclusion. To the contrary, the evidence shows that Gries did not loan funds to petitioner, and that Gries used his own capital, or capital which he borrowed on his own note. The question is not whether petitioner sustained losses upon investments which he made with borrowed capital. If he had borrowed capital and invested it, the year or years of loss would be when the property purchased was sold or became worthless rather than when the borrowed capital was repaid. The proceeding of A.W.D.Weis, 13 B.T.A. 1284, is frequently cited for that rule of law, although it should be noted that it is not cited here by the respondent. The petitioner relies upon Eckert v. Burnet, 283 U.S. 140; Jenkins v. Bitgood, 101 Fed. (2d) 17; and Helvering v. Price, 309 U.S. 409. He claims deductions in the taxable years for the payments he made on his note to the extent of $567.50 for 1942; $1,589 for 1943; $1,248.50 for 1944, and $1,135 for 1945, on the ground that he had no ownership of securities and real estate purchased during 1928 to 1935 and that, since he made his income tax returns on a cash basis, the loss is deductible from gross *202 income of the year in which payment was made. The petitioner's argument is correct. The facts in this proceeding closely resemble the facts in Samuel Eugene Bramer, 6 T.C. 1027, 1035, under one of the issues in that proceeding involving a transaction in shares of Rustless stock which belonged to Foster, an associate of Bramer. Bramer did not invest any funds in the stock and he agreed with Foster to share 50 per cent of any profits or losses which might be realized upon future sales of the stock. The stock was disposed of and Bramer gave Foster his note under his agreement to bear 50 per cent of loss. In 1941, he paid $2,534.85 representing the remaining unpaid principal of the note. He claimed a loss deduction in his return for 1941 in the above amount. We held as follows: "A payment of the balance of the note of $2,534.85 was when the loss was sustained by the petitioner," p. 1035, following the principle of Eckert v. Burnet, supra.See, also, Charles G. Berwind, 8 T.C. 1112, 1119Main Properties, Inc., 4 T.C. 364, 381; I.T. 3252, C.B. 1939-1, p. 182. The question in this proceeding is controlled by Eckert v. Burnet, supra; *203 Jenkins v. Bitgood, supra; and Helvering v. Price, supra.Cf. M. A. Burns Mfg. Co. v. Commissioner, 59 Fed. (2d) 504, 508. The facts here are that petitioner did not purchase any securities or property; he made a contract with Gries to reimburse him for 50 per cent of losses and expenses in consideration for receiving 50 per cent of profits, if any. He incurred liabilities under the contract, but since he was on the cash basis of accounting and reporting income, his loss occurred when he performed his obligation and made payment. E. L. Connelly, 46 B.T.A. 222, 225. Cf. Quinn v. Commissioner, 111 Fed. (2d) 372, 374. The payments which petitioner made on his note represent his loss under his contract and are deductible in the years of the payments. It is held that the petitioner is entitled to deductions in the taxable years. The amount of the deduction which is claimed in each of the taxable years is 45.4 per cent of each payment. That percentage is explained in the findings of fact. It is based upon the figure of $45,523.49 which represented, at one time, the total amount of petitioner's obligation to Gries under *204 the contract with him, but the above figure is not correct because petitioner had paid Gries $1,189.84 at some time prior to April 1, 1936. Petitioner has overlooked this item, but we must take it into account. Bearing heavily against the petitioner, we think the earlier payments must be treated as having been made under the contract to reimburse Gries for losses and expenses rather than as repayments of some of the personal loans, and under such treatment, the indebtedness under the agreement was reduced to $19,523.81, and the proportion of the payments on the note allocable to payment of the contract obligation becomes 44.1 per cent instead of 45.4 per cent. In the recomputation under Rule 50, the petitioner will recompute the amount of the deductions which are allowed under the above holding. Decision will be entered under Rule 50. Footnotes
1. The income tax return for 1942 is not in evidence. It is assumed that petitioner deducted $1,250 for 1942; but this fact need not be found. If there is a discrepancy, it can be taken care of in the recomputation under Rule 50. ↩
2. The errors pointed out above, which were made in the returns for 1943 and 1944 are conceded by the petitioner, so that the effect is, for 1943, that the respondent properly disallowed $250 of the deduction which was taken, and with respect to that part of the deduction, there is no dispute between the parties. With respect to the understatement of the amount deducted in the 1944 return, the petitioner is not claiming an increased deduction of $250.↩
3. No de-
duction
Amount
No de-
Amount
now
paid
duction
Year
deducted
claimed
on note
claimed
1942
$1,250
$ 682.50
$1,250
$ 682.50
1943
3,750
2,161.00
3,500
1,911.00
1944
2,500
1,251.50
2,750
1,501.50
1945
2,500
1,365.00
2,500
1,365.00
The above schedule is made only for purposes of clarification, and for reference in the recomputation under Rule 50.↩
4. The actual amount of petitioner's debt was $71,214.07, but the error was not discovered until after the new note was given. The amount of the note of April 1, 1936, overstated the indebtedness to the extent of $1,189.84, by failing to give effect to that amount which petitioner had paid on account prior to April 1, 1936.↩
5. The above percentages are computed from the total amount of $45,523.49, but this should be corrected to $44,333.65 because of payment of $1,189.84 prior to April 1, 1936. If it is assumed that the earlier payments were to be applied to petitioner's share of losses and expenses, reducing them to $19,523.81, the percentages become 44.1 per cent and 55.9 per cent.↩